## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

DERRICK D. BLASSINGAME,

    Plaintiff,

               v.

RICHARD PHILLIPS, *et al.*,

    Defendants.

Civil Action No.
1:22-cv-03251-SDG

### <u>OPINION AND ORDER</u>

This case is before the Court on several motions filed by the parties: the motion for leave to file a motion for summary judgment [ECF 49] filed by Defendants Michael Karafotias-Gibson, Richard Phillips, Ellias Hellstrom, and Kizzie Ann Peters (the Officer Defendants); the Officer Defendants' concurrently filed motion for summary judgment [ECF 50]; and Plaintiff Derrick D. Blassingame's motion for leave to file an amended memorandum of law in opposition to the Officer Defendants' motion for summary judgment [ECF 54]. Blassingame's and the Officer Defendants' motions for leave are **GRANTED**, and therefore the Court will consider the Officer Defendants' late-filed motion for summary judgment as well as Blassingame's amended memorandum in opposition. After careful consideration of the parties' submissions, the Officer Defendants' motion for summary judgment is **GRANTED**.

## I.    Factual Background

At the outset, the Court notes that neither side has substantially complied with Local Rule 56.1, NDGa, in preparing their summary judgment papers. For example, the Officer Defendants' statement of material facts cites extensively to the pleadings,[1] contrary to LR 56.1(B)(1), NDGa ("Each material fact must be numbered separately and supported by a citation to evidence proving such fact. The Court will not consider any fact . . . supported by a citation to a pleading rather than to evidence."). At the same time, Blassingame's response did not "contain individually numbered, concise, nonargumentative responses corresponding to each of [the Officer Defendants'] numbered undisputed material facts," LR 56.1(B)(2)(a), NDGa, and his own statement of facts also cites extensively to the complaint.[2] In their answer, the Officer Defendants denied nearly all of Blassingame's factual allegations—for the most part, they admit only that they encountered Blassingame on the day in question and that he was given a criminal trespass warning.[3] The Officer Defendants' evidence in support of their motion consists entirely of two exhibits: "CAD Notes" from Decatur Police Department

---

[1]    ECF 50-2.

[2]    ECFs 52-1, 53.

[3]    *See generally* ECF 3; *see also id.* ¶¶ 17, 20, 21, 28, 29, 32.

(DPD)[4] and a screen shot from an officer's body camera footage depicting Blassingame.[5] In his response, Blassingame came forward with the Offense/Incident Report from DPD.[6]

Ordinarily, such disregard for the Court's Local Rules would justify summary denial of the Officer Defendants' motion. However, the Officer Defendants' motion is based primarily on qualified immunity as to Blassingame's Section 1983 claims and official immunity as to his state law claims.[7] This Court is mindful of the Supreme Court's holding that qualified immunity is "an *immunity from suit* rather than a mere defense to liability; and . . . it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (emphasis in original). For that reason, the Supreme Court has "repeatedly [ ] stressed the importance of resolving immunity questions at the earliest possible

---

[4]  "CAD" appears to stand for "Computer Aided Dispatch," which "allow[s] public safety operations and communications to be augmented, assisted, or partially controlled by an automated system [and] can include . . . computer-controlled emergency vehicle dispatching, vehicle status, incident reporting, and management information." Law Enforcement Information Technology Standards Council, *Standard Functional Specifications for Law Enforcement Computer Aided Dispatch (CAD) Systems*, at viii, https://bja.ojp.gov/sites/g/files/xyckuh186/files/media/document/leitsc_law_enforcement_cad_systems.pdf [https://perma.cc/NV7N-YFV8].

[5]  ECF 50-2, Exs. 1, 2.

[6]  ECF 52-1, at 14–17.

[7]  *See generally* ECF 50-1.

stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (collecting cases). The same is true for official immunity under Georgia law, and so the same prudential considerations apply. *McCloud v. Lowndes Cnty. Bd. of Comm'rs*, 369 Ga. App. 756, 758 (2023). Therefore, rather than rely on the parties' summary judgment papers, the Court has undertaken the arduous task of wading into the record itself to determine whether the Officer Defendants are entitled to qualified and official immunity.

The undisputed facts as demonstrated by the record are as follows. On April 19, 2022, Karafotias-Gibson and Peters responded to a Kroger store in Decatur, Georgia in response to a report of shoplifting.[8] A Kroger employee had reported that they observed a male wearing a grey blazer, black shirt, black pants, and red shoes placing deli meat products into a black bag and suspected he was shoplifting.[9] Upon arrival, Karafotias-Gibson observed a Black male wearing black jeans, a black shirt, a grey blazer, and red shoes—later identified as Blassingame— exiting the Kroger store.[10] Karafotias-Gibson greeted Blassingame, who rebuffed him.[11] Karafotias-Gibson told Blassingame that a Kroger employee had reported

---

[8]   ECF 3, ¶ 17; ECF 52-1, at 16.

[9]   ECF 52-1, at 16; *see also* ECF 50-2, Ex. 1.

[10]   ECF 52-1, at 16; *see also* ECF 50-2, Ex. 2.

[11]   ECF 52-1, at 16.

suspected shoplifting by a male matching Blassingame's description.[12] Blassingame became defensive and began cursing at Karafotias-Gibson and Peters.[13] At this point, Karafotias-Gibson told Blassingame that he was not being accused of stealing anything, but that the officers would need to investigate the report.[14] Blassingame began filming the interaction on his cell phone,[15] purportedly streaming live on the internet, and requested to speak with the officers' supervisor.[16] The request was relayed to DPD, and Phillips responded to the scene.[17]

After Phillips arrived, the situation remained largely unchanged, as Blassingame continued to yell at the officers.[18] Blassingame then returned inside

---

[12] *Id.*

[13] *Id.*

[14] *Id.*

[15] In his Statement of Undisputed Material Facts, Blassingame references, in passing, video evidence he had filed with the Court. ECF 53, ¶ 3. Indeed, Blassingame did manually file a CD that contained an audio recording of a 911 call from the Kroger store regarding the alleged shoplifting and Blassingame's cell phone video recording. ECF 36. However, Blassingame does not cite any particular portion of the audio or video evidence in his summary judgment briefing. Out of an abundance of caution, undersigned reviewed the audio and video evidence and concludes that they are consistent with the other documentary evidence cited in this Order.

[16] *Id.*

[17] *Id.*

[18] *Id.*

the store with his receipt.[19] Karafotias-Gibson requested to see the receipt, as it would corroborate whether Blassingame had paid for the items.[20] After initially refusing, Blassingame allowed Phillips to take a picture of the receipt.[21] Phillips informed Blassingame that he would need to stay on the scene until the officers' investigation was completed, on threat of being handcuffed.[22] Karafotias-Gibson also requested that Blassingame allow the officers to inspect the contents of his bag, which Blassingame refused.[23] It does not appear from the record that any search occurred. The officers did speak with Kroger employees and reviewed video footage from the store.[24]

Meanwhile, Peters inquired with Stanley Elligan, the manager of the Kroger store, whether the store wanted to press charges against Blassingame.[25] Elligan

---

[19] *Id.*

[20] *Id.* at 17.

[21] *Id.*

[22] Officer Defendants' Statement of Material Facts, ECF 50-2, ¶ 8 (citing Amended Complaint, ECF 2, ¶¶ 28, 40). The Court notes that the Officer Defendants denied the substance of these allegations in their answer. However, because the Officer Defendants rely on these allegations in support of their motion for summary judgment, the Court will construe these allegations (and any others similarly cited) as admitted for the purposes of this motion.

[23] ECF 52-1, at 17; ECF 50-2, ¶ 5 (citing ECF 2, ¶ 20).

[24] ECF 50-2, ¶ 9 (citing ECF 2, ¶¶ 32, 41).

[25] ECF 52-1, at 17.

stated that the store was not interested in pressing charges, but he did request that the officers give Blassingame a criminal trespass warning, which they did.[26] Later that day, Elligan asked the officers to rescind the trespass warning given to Blassingame, which they also did.[27]

## II.    Procedural Background

Blassingame, proceeding *pro se*, initially brought several civil rights claims against the Officer Defendants, as well as against the Kroger Co. and Elligan (the Kroger Defendants), related to the incident at the Decatur Kroger store. Blassingame filed a first amended complaint in the Superior Court of DeKalb County, Georgia, on May 15, 2022.[28] The Kroger Defendants and the Officer Defendants each filed notices of removal on August 15, and the cases were consolidated in the above-captioned action.[29]

One day after the deadline for dispositive motions, the Kroger Defendants moved for summary judgment.[30] The Clerk mailed a notice to Blassingame to respond to the Kroger Defendants' motion for summary judgment.[31] Almost two

---

[26]    *Id.*

[27]    *Id.* at 14.

[28]    ECF 1-1. The original complaint is not included with the Notice of Removal filed by the Officer Defendants. *See id.*

[29]    ECFs 1, 7.

[30]    ECFs 12, 22.

[31]    ECF 24.

months later, the Officer Defendants filed a motion to dismiss, or in the alternative a motion for summary judgment.[32] The docket remained quiet until January 2024, when Blassingame filed a motion for leave to file outside of the time allowed, presumably to submit responses to Defendants' pending dispositive motions.[33] Shortly thereafter, Blassingame voluntarily dismissed the Kroger Co.[34] The Court then issued an Order, amended on February 12, 2024, which required Blassingame to file a response to the Kroger Defendants' motion for summary judgment as it pertained to Elligan, denied without prejudice the Officer Defendants' motion to dismiss, and directed the Officer Defendants to refile their motion in compliance with the Local Rules and the Court's Orders, as well as show cause as to why their motion was filed several months after the dispositive motion deadline.[35] A few days later, Blassingame voluntarily dismissed Elligan.[36]

On March 4, 2024—approximately one year after the close of discovery—Blassingame moved for an extension of the discovery period.[37] The Court denied

---

[32] ECF 25.

[33] ECF 28. The next day, Blassingame filed an opposition to the Officer Defendants' motion to dismiss. ECF 29.

[34] ECF 31.

[35] ECF 41.

[36] ECF 42.

[37] ECF 45.

Blassingame's motion and also directed the Officer Defendants to respond to the Court's February 12 Show Cause Order within 14 days.[38] A few days later, the Officer Defendants filed the instant motion for leave and motion for summary judgment.[39] Blassingame filed an opposition to the Officer Defendants' summary judgment motion and requested oral argument.[40] Two months later, Blassingame filed a motion for leave to file an amended memorandum of law in opposition to the Officer Defendant's motion for summary judgment.[41]

## III. Applicable Legal Standards

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it can affect the outcome of the lawsuit under the governing legal principles. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "genuine . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

---

[38]  ECF 48.

[39]  ECFs 49, 50.

[40]  ECF 52. Because the Court concludes that oral argument is not necessary to resolve the pending motions, Blassingame's motion for oral argument is **DENIED**.

[41]  ECF 54.

A party seeking summary judgment has the burden of informing the district court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If a movant meets its burden, the party opposing summary judgment must present evidence showing either (1) a genuine issue of material fact or (2) that the movant is not entitled to judgment as a matter of law. *Id.* at 324.

In determining whether a genuine issue of material fact exists, the evidence is viewed in the light most favorable to the party opposing summary judgment, "and all justifiable inferences are to be drawn" in favor of that party. *Anderson*, 477 U.S. at 255; *see also Herzog v. Castle Rock Ent.*, 193 F.3d 1241, 1246 (11th Cir. 1999). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions," and cannot be made by the court in evaluating summary judgment. *Anderson*, 477 U.S. at 255; *see also Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999). Summary judgment for the moving party is proper "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## IV.    Discussion

First, the Court will address the parties' motions for leave to permit their late filings. Because those motions are granted, the Court will then address the merits of the Officer Defendants' motion for summary judgment.

### A.    The Officer Defendants and Blassingame are granted leave for their late filings.

The Officer Defendants and Blassingame each seek leave for their late filings: in the case of the Officer Defendants, for their summary judgment motion, and in the case of Blassingame, an amended response in opposition.[42] Rule 6(b) provides that "[w]hen an act may or must be done within a specified time, the court may, for good cause, extend the time . . . . on motion made after the time has expired if the party failed to act because of excusable neglect." To guide the Court's analysis, "[t]he Supreme Court has designated four factors that a court should consider when determining whether a late filing results from excusable neglect: (1) the danger of prejudice to the [non-moving party]; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant; and

---

[42]   ECFs 49, 54. Of note, Blassingame did file a timely opposition to the Officer Defendants' motion for summary judgment, but according to his motion for leave, his initial response omitted certain arguments. ECF 54. Accordingly, the Court will construe Blassingame's motion for leave as seeking to file an out-of-time opposition pursuant to Fed. R. Civ. P. 6(b).

(4) whether the movant acted in good faith." *Satco Prods., Inc. v. Seoul Semiconductor Co.*, 551 F. Supp. 3d 1329, 1331 (N.D. Ga. 2021) (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993)) (quotation marks omitted). At the same time, "'excusable neglect' under Rule 6(b) is a somewhat 'elastic concept' and is not limited strictly to omissions caused by circumstances beyond the control of the movant." *Id.* (quoting *Pioneer*, 507 U.S. at 392).

As to the first *Pioneer* factor, neither Blassingame nor the Officer Defendants have responded to each other's motions for leave. Thus, there is no indication from the parties that they will be prejudiced by the Court's decision to consider summary judgment.

As to the second *Pioneer* factor, the length of the delay most applicable here is the approximately two months that elapsed between the dispositive motion deadline and the filing of the Officer Defendants' initial motion to dismiss.[43] Subsequent delays in the filing of the Officer Defendants' motion for summary judgment could reasonably be attributed to the Court's efforts to administratively manage this case.[44] The Court also notes that Blassingame did timely file an initial summary judgment response, though he admits that it was incomplete.[45]

---

[43]  ECFs 12, 25.

[44]  ECFs 41, 48.

[45]  ECFs 52, 53, 54. Of course, this does not account for the approximately seven-month delay that Blassingame took in responding to the Officer Defendants'

Blassingame filed his amended response exactly 2 months later. Essentially, the parties have each contributed a 2-month delay to these proceedings. In practical terms, these delays have not significantly impacted the Court's disposition of this case, and the Court concludes that judicial economy is better served by addressing the untimely summary judgment motion, as the purpose of summary judgment is to determine whether there are any genuine disputes of material fact for trial. *See Thomas v. Kroger Co.*, 24 F.3d 147, 149 (11th Cir. 1994) (internal quotation marks and citation omitted) ("A district court . . . may consider an otherwise untimely motion [for summary judgment] if, among other reasons, doing so would be the course of action most consistent with the interest of judicial economy.").

As to the third *Pioneer* factor, the Supreme Court has held that excusable neglect may include "inadvertent or negligent omission[s]." *Pioneer*, 507 U.S. at 394–95; *see also Cheney v. Anchor Glass Container Corp.*, 71 F.3d 848, 850 (11th Cir. 1996) (finding that miscommunication between plaintiff's attorneys, leading to late filing, was an "omission[ ] caused by carelessness" and thus constituted excusable neglect). The parties have each asserted that their late filings were the result of simple carelessness: the Officer Defendants stated that they had a "docketing error"—presumably a reference to incorrectly docketing the deadline for

---

untimely motion to dismiss, but that issue was addressed in the Court's February 12, 2024 Order. ECF 41.

dispositive motions—and Blassingame stated that he "did not submit the correct Memorandum."[46] There being no responses to the motions for leave, the Court has no reason to doubt the veracity of the parties' admitted mistakes.

Regarding the fourth and final *Pioneer* factor, the Court concludes that the parties acted in good faith. The parties submitted explanations admitting fault, and there is no evidence that any party willfully or intentionally failed to timely file. Taken together, the *Pioneer* factors weigh in favor of a finding that the parties' late filings constitute excusable neglect.

Lastly, the Court notes that the Officer Defendants' motion for summary judgment raises the issues of qualified and official immunity.[47] As previously noted in Section I, qualified and official immunity are both "an *immunity from suit* rather than a mere defense to liability," and the Supreme Court has "repeatedly stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Jordan v. Doe*, 38 F.3d 1559, 1565 (11th Cir. 1994) (emphasis in original) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985); *Hunter*, 502 U.S. at 227)); *see also McCloud*, 369 Ga. App. at 758 (official immunity is an immunity from suit under Georgia law).

---

[46]   ECFs 49, 54.

[47]   *See generally* ECF 50-1.

Because the Court finds that the parties' late filings were due to excusable neglect, and in the interest of seeking to resolve the question of the Officer Defendants' immunity at the earliest possible stage in this litigation, the parties' motions for leave to permit late filings are **GRANTED**. The Court will now address the merits of the Officer Defendants' motion for summary judgment.

### B.    The Officer Defendants are entitled to summary judgment on Blassingame's claims.

Blassingame's amended complaint contains six counts: (1) False Imprisonment pursuant to 42 U.S.C. § 1983 and O.C.G.A § 16-5-4(a); (2) Intentional Infliction of Emotional Distress (IIED) pursuant to Section 1983 and O.C.G.A § 9-3-33; (3) Unreasonable Seizure pursuant to (presumably) Section 1983; (4) Discrimination in violation of the ordinances of the City of Decatur; (5) Conspiracy to Interfere in Civil Rights pursuant to 42 U.S.C. § 1985 and O.C.G.A. § 16-4-8; and (6) Punitive Damages pursuant to O.C.G.A. § 16-4-8.[48] The

---

[48] At first glance, none of Blassingame's O.C.G.A. citations correspond to the captioned cause of action. However, it appears clear that Blassingame's first count was intended to be brought under O.C.G.A. § 16-5-*41*. This presents a separate issue in that Blassingame's False Imprisonment and Conspiracy claims are brought pursuant to criminal statutes which do not provide for a civil cause of action. *See Smith v. Chemtura Corp.*, 297 Ga. App. 287, 295 (2009) (no civil cause of action for false imprisonment pursuant to § 16-5-41); *see also id.* ("The violation of a penal statute does not automatically give rise to a civil cause of action on the part of one who claims to have been injured thereby . . . . nothing within the provisions of the criminal statutes specified by the plaintiffs provides a basis for a civil action by an alleged victim.") (cleaned up). Acknowledging that Blassingame is appearing *pro se*, the Court will construe

Officer Defendants seek summary judgment on each of these claims, primarily on the grounds that they are immune from suit under the doctrines of qualified immunity (as to the Section 1983 claims) and official immunity (as to the state law claims).[49] After a careful review of the record and the parties' submissions, the Court concludes that: (1) the Officer Defendants are entitled to qualified immunity on Blassingame's claims under Section 1983; (2) Blassingame has not presented any evidence to satisfy the elements of his Section 1985 claim; and (3) the Officer Defendants are entitled to official immunity on Blassingame's state law claims.

> **1.    The Officer Defendants are entitled to qualified immunity on Blassingame's claims under Section 1983.**

Section 1983 is not a source of rights—it is a method to vindicate existing federal rights. *Graham v. Connor*, 490 U.S. 386, 393–94 (1989); *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979). When a court considers a Section 1983 claim, it must identify the specific constitutional or federal right allegedly infringed. *Graham*, 490 U.S. at 393–94; *Baker*, 443 U.S. at 140. Blassingame brings three claims for relief under Section 1983: false imprisonment and IIED in violation of the Fourteenth Amendment, and unreasonable seizure in violation of the Fourth Amendment.

---

his amended complaint liberally as alleging the tort claims listed in the caption of each count.

[49]    *See generally* ECF 50-1.

The Court can quickly dispose of the IIED claim in the context of Section 1983, as "an intentional infliction of emotional distress claim under Section 1983 is not a viable claim for relief." *Rubin v. City of Miami Beach*, No. 19-20520-CIV, 2019 WL 11470833, at *4 (S.D. Fla. Feb. 12, 2019) (citing *Vongrabe v. Wadsworth*, No. 3:05-CV-1023-J-32MCR, 2006 WL 8439428, at *1 (M.D. Fla. Apr. 4, 2006); *Lopez v. City of New York*, 901 F. Supp. 684, 691 (S.D.N.Y. 1995)). The Court will address the viability of Blassingame's state law claims in Section IV.B.3, *infra*.

As for the false imprisonment and false arrest claims under Section 1983, the two claims are best understood as one. "False arrest and false imprisonment overlap; the former is a species of the latter." *Wallace v. Kato*, 549 U.S. 384, 388 (2007). Indeed, "[e]very confinement of the person is an imprisonment . . . even by forcibly detaining one in the public streets." *Id.* at 388–89 (citation omitted). The Supreme Court therefore refers to the two torts together as "false imprisonment," *i.e.*, a "detention *without legal process*." *Id.* (emphasis in original); *see also Williams v. Aguirre*, 965 F.3d 1147, 1158 (11th Cir. 2020) ("A claim of false arrest or imprisonment under the Fourth Amendment concerns seizures without legal process, such as warrantless arrests."). Regardless of the label, these claims are premised on the same basic facts: that the Officer Defendants detained Blassingame at the Kroger store without a warrant and (as Blassingame sees it)

without probable cause. The Court will therefore consider these claims as one for qualified immunity purposes.

### i.    Principles of Qualified Immunity

The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223 (2009). To apply this doctrine, the official must have been engaged in a "discretionary function" when performing the acts of which the plaintiff complains. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (holding that qualified immunity extends to "government officials performing discretionary functions"). In *McCoy v. Webster,* 47 F.3d 404, 407 (11th Cir. 1995), the Eleventh Circuit interpreted "the term 'discretionary authority' to include actions that do not necessarily involve an element of choice," and emphasized that, for purposes of qualified immunity, a governmental actor engaged in purely ministerial activities can nevertheless be performing a discretionary function. In other words, instead of focusing on whether the acts in question involved the exercise of actual discretion, courts should assess whether they are of a type that fall within the employee's job responsibilities. *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004).

Once the official establishes that they were acting within their discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate. *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). Officials are not entitled to qualified immunity if their actions (1) violated a constitutional right; and (2) "the unlawfulness of their conduct was 'clearly established at the time.'" *District of Columbia v. Wesby*, 583 U.S. 48, 62–63 (2018). If the plaintiff prevails on both prongs of this test, then the official is not entitled to qualified immunity. "These two steps do not have to be analyzed sequentially; if the law was not clearly established, we need not decide if the Defendants actually violated the Plaintiffs' rights, although we are permitted to do so." *Fils v. City of Aventura*, 647 F.3d 1272, 1287 (11th Cir. 2011) (citing, *inter alia*, *Pearson v. Callahan*, 555 U.S. 223 (2009)).

### *a.*    **Discretionary Authority**

Blassingame does not squarely dispute that the Officer Defendants were acting within their discretionary authority when they stopped him at the Kroger store, though he does argue that they went beyond the scope of their authority by unlawfully detaining him.[50] This argument is better suited to the reasonableness of the detention—which speaks to the underlying constitutional violation—rather than the Officer Defendants' discretionary authority. *See Jackson v. City of Atlanta*, 97 F.4th 1343, 1356 (11th Cir. 2024) ("There is no dispute that in making an

---

[50]    ECF 54-1, at 7.

investigatory stop an officer is exercising a discretionary function. Whether a stop violated clearly established law given the circumstances is another question."). Thus, the Court concludes that there is no genuine dispute that the Officer Defendants were performing a discretionary function when they stopped Blassingame, and so the burden shifts to Blassingame to demonstrate that the Officer Defendants violated his clearly established constitutional right.

### b. Violation of a Clearly Established Constitutional Right

The parties disagree as to the correct characterization of the interaction between the Officer Defendants and Blassingame: the Officer Defendants present the interaction as a *Terry* stop,[51] whereas Blassingame argues it was an arrest. The difference between the two "is one of extent, with the line of demarcation resulting from the weighing of a limited violation of individual privacy involved against the opposing interests in crime prevention and detection and in the police officer's safety." *United States v. Acosta*, 363 F.3d 1141, 1146 (11th Cir. 2004) (internal quotation marks and citation omitted). The difference also has legal significance, as the former requires only reasonable suspicion, whereas the latter requires

---

[51] "*Terry* stop" is shorthand for a "reasonably brief encounter[ ] in which a reasonable person would have believed that he or she was not free to leave," based upon reasonable suspicion for the purpose of an investigative detention. *United States v. Hastamorir*, 881 F.2d 1551, 1556 (11th Cir. 1989) (citing *Terry v. Ohio*, 392 U.S. 1 (1968)).

probable cause. *See United States v. Hastamorir*, 881 F.2d 1551, 1556 (11th Cir. 1989) (contrasting *Terry* stops and full-scale arrests). Applying the *Terry* framework first, the Court concludes that the Officer Defendants had arguable reasonable suspicion to stop Blassingame, and the encounter did not mature into a full-scale arrest. Therefore, the Officer Defendants are entitled to qualified immunity on Blassingame's Section 1983 claims.

### ii.    Application of Qualified Immunity Principles

*Terry* set out a two-part inquiry to evaluate the reasonableness of an investigative stop. *Acosta*, 363 F.3d at 1144. First, the Court must "examine whether the officer's action was justified at its inception, which turns on whether the officers had a reasonable suspicion that the defendant had engaged, or was about to engage, in a crime." *Id.* at 1144–45 (internal quotation marks and citations omitted). Second, the Court "determine[s] whether the stop went too far and matured into arrest before there was probable cause" by considering "whether [the stop] was reasonably related in scope to the circumstances which justified the interference in the first place." *Id.* at 1145 (internal quotation marks and citations omitted).

### a.    The Officer Defendants Had Arguable Reasonable Suspicion to Stop Blassingame.

For the first prong of the *Terry* inquiry, the Court concludes that the Officer Defendants' stop of Blassingame was supported by the requisite reasonable

suspicion. "The law is clearly established that an officer's 'brief, investigatory stop' of a suspect does not violate the Fourth Amendment 'when the officer has a reasonable, articulable suspicion that criminal activity is afoot.'" *Jackson v. City of Atlanta*, 97 F.4th at 1355–56 (quoting *Jackson v. Sauls*, 206 F.3d 1156, 1165 (11th Cir. 2000)). Reasonable suspicion "is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence," though "the Fourth Amendment requires at least a minimal level of objective justification for making the stop." *Jackson v. Sauls*, 206 F.3d at 1165 (quoting *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000)). In assessing reasonable suspicion, the Court "must look at the totality of the circumstances of each case to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing." *Jackson v. City of Atlanta*, 97 F.4th at 1356 (quoting *United States v. Arvizu*, 534 U.S. 266, 273 (2002)). Ultimately, the question "is not whether reasonable suspicion existed in fact, but whether the officer had 'arguable' reasonable suspicion to support an investigatory stop." *Jackson v. Sauls*, 206 F.3d at 1166 (collecting cases).

The Officer Defendants had arguable reasonable suspicion to stop Blassingame. "Generally, an officer is entitled to rely on a victim's criminal complaint as support for probable cause." *Rankin v. Evans*, 133 F.3d 1425, 1441 (11th Cir. 1998). The call to DPD was initiated by an employee at the Kroger store

22

who witnessed the alleged shoplifting.[52] *See Illinois v. Gates*, 462 U.S. 213, 234 (1983) (holding that an informant's "explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed first-hand, entitles his tip to greater weight" in the probable cause determination). When the Officer Defendants arrived, Blassingame was an exact match for the description provided by the caller: grey blazer, black jeans, and red shoes.[53] Thus, with the information that the Officer Defendants had at the time that they initially encountered Blassingame, the Court concludes that they had arguable reasonable suspicion to stop him.

### b. The Officer Defendants' Stop of Blassingame Did Not Mature into a Full-Scale Arrest.

For the second prong of the *Terry* inquiry, the Court further concludes that the Officer Defendants' stop of Blassingame did not mature into a full-scale arrest. To assist in distinguishing between a *Terry* stop and an arrest, the Eleventh Circuit has applied four non-exclusive factors: "the law enforcement purposes served by the detention, the diligence with which the police pursue the investigation, the scope and intrusiveness of the detention, and the duration of the detention."

---

[52]    ECF 52-1, at 16.

[53]    ECF 50-2, Exs. 1, 2.

*Acosta*, 363 F.3d at 1146 (internal quotation marks and citations omitted). The Court will address each factor in turn.

### 1.    The law enforcement purposes served by the detention

The first *Acosta* factor primarily considers whether "the police detained [the suspect] to pursue a method of investigation that was likely to confirm or dispel their suspicions quickly, and with a minimum of interference." *Acosta*, 363 F.3d at 1146 (quoting *United States v. Gil*, 204 F.3d 1347, 1351 (11th Cir. 2000)). In *United States v. Hardy*, 855 F.2d 753 (11th Cir. 1988), the Eleventh Circuit reasoned that a *Terry* stop justified noncustodial questioning of a detained person but not a "full search" or a custodial interrogation. *Id.* at 759. In *Acosta*, the Eleventh Circuit applied *Hardy* to conclude that a stop where officers questioned the suspect in his car, requested permission to search his car, searched his nearby apartment (with permission), and then searched his bag (also with permission) was the sort of brief, minimally intrusive investigation that weighed in favor of a *Terry* stop. 363 F.3d at 1146; *see also id.* ("Because this series of acts was designed to lead to a quick and non-intrusive resolution of the officers' reasonable suspicions, the first factor weighs in favor of the legality of the stop."). The Officer Defendants' stop of Blassingame involved noncustodial questioning, a request to search Blassingame's bag, and then a relatively short investigation of the available evidence at the

Kroger store, involving speaking with employees and reviewing video footage.[54]

Under the standard set out in *Acosta*, this factor weighs in favor of a *Terry* stop.

### 2.    The diligence with which the police pursued the investigation

The second *Acosta* factor asks "whether the methods the police used were carried out without unnecessary delay." *Id.* at 1146. As was the case in *Acosta*, "[n]othing in the record indicates that the police were less than prompt in carrying out their on-the-scene investigation," and "[e]ach investigatory act logically led to the next act which was done without delay." *Id.* And while Blassingame was not required to consent to a search of his bag, his refusal reasonably contributed to the length of the investigation, in addition to his abrasive conduct. This factor weighs in favor of a *Terry* stop.

### 3.    The scope and intrusiveness of the detention

The third *Acosta* factor considers "whether the scope and intrusiveness of the detention exceeded the amount reasonably needed by police to ensure their personal safety." *Id.* Crucially here, "[w]hile restriction on freedom of movement is a factor to be taken into account in determining whether a person is under arrest, it alone is not sufficient to transform a *Terry* stop into a *de facto* arrest." Indeed, the Eleventh Circuit has held that a *Terry* stop does not necessarily become an arrest

---

[54]    ECF 52-1, at 14.

because "an officer draws his weapon, handcuffs a suspect, orders a suspect to lie face down on the ground, or secures a suspect in the back of a patrol car." *Id.* at 1147 (collecting cases) (citations omitted). Here, the **only** relevant fact is that Phillips told Blassingame he was not free to leave, on threat of being handcuffed.[55] But "the very nature of a *Terry* stop includes stopping a suspect from leaving," *id.*, and "*an investigatory stop is not an arrest despite the fact that a reasonable person would not believe he was free to leave,*" *United States v. Blackman*, 66 F.3d 1572, 1576 (11th Cir. 1995) (emphasis in original). Thus, the third *Acosta* factor is not inconsistent with a *Terry* stop.

### 4.    The duration of the detention

The last *Acosta* factor is "whether the duration of the detention was reasonable." 363 F.3d at 1147. There is no specific time limitation for a *Terry* stop. *Id.* (citing *United States v. Place*, 462 U.S. 696, 709–10 (1983); *United States v. Purcell*, 236 F.3d 1274, 1279 (11th Cir. 2001)). In *Acosta*, the Eleventh Circuit surveyed its decisions as well as the Supreme Court's opinion in *Place* and noted that they had permitted *Terry* stops of 50 minutes and 75 minutes, but the Supreme Court had concluded that a 90-minute detention was unreasonable. *Id.* (citing *Gil*, 204 F.3d at 1350; *Hardy*, 855 F.2d at 761; *Place*, 462 U.S. at 709–10). The available evidence shows that the Officer Defendants' stop of Blassingame lasted approximately one

---

[55]    ECF 50-2, ¶ 8 (citing ECF 2, ¶¶ 28, 40).

hour.[56] This fact fits neatly within the space carved out by the Eleventh Circuit in *Acosta*.

The fourth *Acosta* factor is not judged solely by a stopwatch, though: the Court must also "consider whether the police diligently pursued a means of investigation likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant." *Id.* (citing *United States v. Sharpe*, 470 U.S. 675, 686 (1985)). This is a test of "common sense and ordinary human experience." *Id.*

While originally directed at a different point, Blassingame's argument that his possession of a receipt as a complete defense to the alleged shoplifting is relevant here, as it would no longer have been necessary to detain Blassingame if the Officer Defendants had definitive proof that he had not shoplifted. Blassingame's refusal to consent to a search of his bag—again, well within his constitutional rights—prevented a comparison between the list of his purchases and the items in his bag. The existence of the receipt is certainly evidence that *something* was purchased, but it does not conclusively resolve the Kroger

---

[56]  ECF 50-2, Ex. 1 (showing the case was opened at 8:12 and closed at 9:15). Blassingame's video recording is 41 minutes long, though it begins after the Officer Defendants arrived at the Kroger store.

employees' concerns that something else was shoplifted.[57] Unwilling to search Blassingame's bag over his objection, the Officer Defendants dispelled their suspicions relatively quickly by speaking with Kroger employees and reviewing video footage. Considering the time and scope of the stop, the fourth *Acosta* factor weighs in favor of a *Terry* stop.

Because the Officer Defendants had arguable reasonable suspicion to stop Blassingame at the Kroger store, and the stop did not mature into a full-scale arrest, the Officer Defendants are entitled to qualified immunity as to Blassingame's Section 1983 claims and thus summary judgment.

### 2. Blassingame has not presented any evidence to satisfy the elements of his Section 1985 claim.

The Court's analysis of Blassingame's Section 1985 claim illustrates the difficulty of appraising this motion for summary judgment. Neither side has

---

[57] Blassingame also cites to *Stefani v. City of Grovetown*, No. 1:15-CV-164, 2016 WL 4611575 (S.D. Ga. Sept. 2, 2016), which denied a motion to dismiss asserting qualified immunity and reasoned in part that the defendant officers allegedly possessed a video depicting the plaintiff at a restaurant in a different city in different clothes with a different vehicle within 15 minutes of the suspected crime, and thus lacked probable cause to arrest the plaintiff. *Id.* at *5. *Stefani* is inapposite for several reasons: the evidentiary standard at the motion-to-dismiss stage is not compatible with the summary judgment standard applied here; and the allegedly exculpatory evidence was in the possession of the *Stefani* defendants before the plaintiff's arrest, whereas here the Officer Defendants' arguable reasonable suspicion was supported by the Kroger employee's complaint, and the purportedly exculpatory evidence was obtained after Blassingame was stopped, over the course of the investigation.

argued the Section 1985 claim in any meaningful way: the Officer Defendants brusquely state that Blassingame's conspiracy claim should be "dismissed as a matter of law because Plaintiff's allegations do not constitute the basis for a legal remedy"[58]; Blassingame asserts as fact that the Officer Defendants "conspired with Kroger employees to interfere with his civil rights as indicated in Plaintiff's complaint," citing to his amended complaint.[59]

The Eleventh Circuit has held that "[w]hen a party moves for final, not partial, summary judgment . . . it becomes incumbent upon the nonmovant to respond by, at the very least, raising in their opposition papers any and all arguments or defenses they felt precluded judgment in the moving party's favor." *Case v. Eslinger*, 555 F.3d 1317, 1329 (11th Cir. 2009) (cleaned up) (quoting *Johnson v. Bd. of Regents*, 263 F.3d 1234, 1264 (11th Cir. 2001)). The Court understands the Officer Defendants to argue that there is no evidence to support the elements of Blassingame's Section 1985 claim. As Blassingame would have the burden of proof at trial on his Section 1985 claim, he has the burden at summary judgment to "'go beyond the pleadings,' and by [his] own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there

---

[58] ECF 50-1, at 10–11. Of course, at summary judgment the question is whether *judgment* as a matter of law should be granted in the movant's favor, not dismissal. Fed. R. Civ. P. 56(a).

[59] ECF 53, ¶ 6 (citing ECF 2, ¶¶ 69, 72).

is a genuine issue for trial." *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593–94 (11th Cir. 1995) (quoting *Celotex*, 477 U.S. at 324). Blassingame has failed to satisfy this burden as to his Section 1985 claim, and therefore summary judgment is appropriate.

To recover on a Section 1985 claim, Blassingame must prove "(1) a conspiracy; (2) for the purpose of depriving, directly or indirectly, any person or class of persons of the equal protection of the laws or of equal privileges and immunities under the laws; (3) an overt act in furtherance of the object of the conspiracy; and (4) that the plaintiff (a) was injured in his person or property, or (b) was deprived of having and exercising any right or privilege of a United States citizen." *Byrd v. Clark*, 783 F.2d 1002, 1007 (11th Cir. 1986) (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102–03 (1971)).[60] Once the Officer Defendants moved for summary judgment on all claims,[61] Blassingame "may not rest upon the allegations of [his] complaint, but rather must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 1008. But this is exactly what Blassingame has done in citing to two allegations in his amended complaint, which the Officer

---

[60] Specifically, the elements listed in *Byrd* apply to claims under Subsection 3 of Section 1985. *See* 783 F.2d at 1007. While not specified in any of the pleadings or summary judgment briefing, Blassingame's claim plainly falls under Subsection 3 ("Depriving persons of rights or privileges").

[61] ECF 50-1, at 12.

Defendants have not admitted. Blassingame has not pointed to any *evidence* of a conspiracy, and thus his Section 1985 claim fails at the first step. Therefore, the Officer Defendants are entitled to summary judgment on the Section 1985 claim.

### 3. The Officer Defendants are Entitled to Official Immunity as to Blassingame's State Law Claims.

The Officer Defendants seek summary judgment on Blassingame's state law claims on the basis of official immunity. Having considered the record, such as it is, and the contentions of the parties, the Court concludes that Blassingame's state law claims meet a similar fate as his federal law claims.

#### i. Principles of Official Immunity

Under Georgia law, "[t]he doctrine of official immunity offers public officers and employees limited protection from suit in their personal capacity. Official immunity protects individual public agents from personal liability for discretionary actions taken within the scope of their official authority, and done without wilfulness, malice, or corruption." *Everson v. Dekalb Cnty. Sch. Dist.*, 344 Ga. App. 665, 667 (2018). Georgia courts have defined discretionary acts as those "call[ing] for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed." *Reed v. DeKalb Cnty.*, 264 Ga. App. 83, 86 (2003) (quoting *Harvey v. Nichols*, 260 Ga. App. 187, 191 (2003)).

### *a.* **Discretionary Actions**

As previously noted in Section IV.B.1.i, *supra*, Blassingame indirectly disputes that the Officer Defendants were performing discretionary acts when they stopped him at the Kroger store. In the state law official immunity context, Georgia courts have frequently held that police officers act within their discretionary authority in investigating cases, conducting searches, and making arrests. *See, e.g.*, *Marshall v. Browning*, 310 Ga. App. 64, 67 (2011) (citing *Anderson v. Cobb*, 258 Ga. App. 159, 160–61 (2002)); *Reed v. DeKalb Cnty.*, 264 Ga. App. 83, 86 (2003) (holding that the decision to make a warrantless arrest is generally a discretionary act). Here, the Officer Defendants acted within their discretionary authority in the course of their investigation of the Kroger store's report of suspected shoplifting, including by conducting a *Terry* stop of Blassingame but ultimately choosing—based on the information gathered over the course of their investigation—not to make an arrest. Therefore, the Officer Defendants are entitled to official immunity from Blassingame's state law claims unless he can show that they acted with malice.

### *b.* **Actual Malice**

Blassingame has not presented evidence that the Officer Defendants acted with actual malice. In the context of official immunity, the Georgia Supreme Court has interpreted the malice requirement narrowly:

> "Actual malice" requires a deliberate intention to do wrong. It does not include "implied malice," i.e., the reckless disregard for the rights or safety of others. Instead, actual malice requires more than "harboring bad feelings" or "ill will" about another; rather, ill will must also be combined with the intent to do something wrongful or illegal. Moreover, the phrase "actual intent to cause injury" has been defined in a tort context to mean an actual intent to cause harm to the plaintiff, not merely an intent to do the act purportedly resulting in the claimed injury. This definition of intent contains aspects of malice, perhaps a wicked or evil motive.

*Wyno v. Lowndes Cnty.*, 305 Ga. 523, 531 (2019) (citations omitted and cleaned up).

Actual malice may be shown by evidence that the officers were motivated by personal animus, or that they manufactured evidence or procured perjured testimony. *See Marshall*, 310 Ga. App. at 68. In the related context of probable cause determinations, officers are not entitled to official immunity where a jury could reasonably infer that they "arrested the plaintiff despite knowing that she did not commit the crimes for which they accused her." *Id.* at 68 (citing *Bateast v. DeKalb Cnty.*, 258 Ga. App. 131, 132–33 (2002)). However, where an officer's decision to seek warrants "might be characterized as 'misguided,'" the Georgia Court of Appeals has held that there was no evidence of actual malice for official immunity purposes. *Id.* at 69 (citing *Todd v. Kelly*, 244 Ga. App. 404, 407 (2000)). In *Marshall*, the Georgia Court of Appeals ultimately concluded that the officer did not act with actual malice in obtaining arrest and search warrants based on uncorroborated statements from the victims, despite evidence that the officer was motivated by her personal history and perception of the suspect's guilt, holding that "there was

not such a lack of evidence of [the suspect's] guilt that a trier of fact could infer that [the officer] pursued [the suspect's] prosecution with the knowledge that he was not guilty and so intended to do wrong." *Id.* at 68–70.

### ii.    Application of Official Immunity Principles

Turning to the facts of this case, there is not such a lack of evidence that the factfinder could infer that the Officer Defendants pursued a *Terry* stop of Blassingame with the knowledge that he was not guilty of shoplifting. As in *Marshall*, the Officer Defendants here relied on uncorroborated statements from the Kroger employee who initially reported the shoplifting. There is no evidence that the Officer Defendants had a personal animus against Blassingame, nor is there any suggestion of falsified evidence or testimony. While the fact that Blassingame had a receipt is some indication that he was not guilty of shoplifting—and notably the Officer Defendants did not ultimately charge Blassingame with shoplifting—it does not present a factual scenario analogous to *Bateast*, where the plaintiff presented evidence that the officers were in possession of clearly exculpatory information but simply ignored it and arrested the plaintiff despite the lack of any other evidence. 258 Ga. App. at 132. The record in this case shows that Blassingame refused to permit a search of his bag, thereby preventing the Officer Defendants from conclusively determining whether the items on his receipt matched the items in his possession. Instead, the Officer Defendants

pursued the avenues of investigation available to them by speaking with employees and reviewing video footage, ultimately concluding that there was insufficient evidence to charge Blassingame. Because there is no evidence that the Officer Defendants effected their *Terry* stop of Blassingame with actual malice, they are entitled to summary judgment on Blassingame's state law claims. And because "an award of punitive damages cannot be made in the absence of an award of damages on the underlying tort claim," *Whitaker Farms, LLC v. Fitzgerald Fruit Farms, LLC*, 320 Ga. 208, 218 (2024), the Officer Defendants are entitled to summary judgment on Blassingame's punitive damages claim as well.

## V.    Conclusion

The Officer Defendants' motion for leave to file a motion for summary judgment [ECF 49] and Blassingame's motion for leave to file an amended memorandum of law in opposition to Defendants' motion for summary judgment [ECF 54] are **GRANTED**. Blassingame's motion for oral argument is **DENIED**. Having considered the merits of the Officer Defendants' motion for summary judgment [ECF 50], the motion is **GRANTED**.

The Clerk of Court is **DIRECTED** to enter judgment in favor of Defendants and against Plaintiff, and to close this case.

**SO ORDERED** this 25th day of March, 2025.

Steven D. Grimberg
United States District Judge